All right, thank you. You can be seated. All right, two more veterans. Ms. Pratt, nice to see you again. Whenever you want to start, Ms. Pratt, we'll be glad to hear from you. May it please the Court, are you able to hear me? I know, Judge Duncan, you've had some problems at times. You might want to pull the mic down. May it please the Court, at issue in this case is whether the government breached the plea agreement that it made with David Parker in order to induce him to enter his guilty plea. Even on plain error review, the facts establish that the government breached that agreement and that Mr. Parker was harmed by the breach. Moreover, this Court should make clear that it does not condone the government's conduct by exercising its discretion to correct the error and send this case back to the district court with instructions that it go to a different judge. Turning to the breach, if I can turn to the correct page. The plea agreement provided that, quote, in accordance with Rule 11C1B of the Federal Rules of Criminal Procedure, the United States and the defendant will recommend to the court that at least the following provisions of the sentencing guidelines apply. Then as to count one, and I'll address count one and count three. That's got to be one of the worst sentences in English that's ever been written. It is not a good sentence, Judge Davis. I agree with that. As to count one, the parties agreed to recommend that the applicable guideline is Section 2B1.1 with a base offense level of six and the loss amount for the offense is more than $70,000 but less than $120,000, resulting in an eight-level increase to the base offense level. As to count three, again, I'm quoting, the applicable guideline is Section 2B1.1 with a base offense level of seven and the loss amount for the offense is more than $120,000 but less than $200,000, resulting in a ten-level increase to the base offense level. As to count three, the parties also agreed that the defendant willfully obstructed or impeded the administration of justice or attempted to do so, resulting in a two-level increase under Chapter 3C1.1. Through affirmative declarative language, the parties staked out a specific detailed position on the application of the fraud guideline to the four separate fraud counts, including noting different base offense levels, count-by-count increases for loss, and as to count three, application of a Chapter 3 enhancement. So it is very clear that the parties agreed that the fraud guideline would lie count-by-count, and having so carefully spelled out the application of the guidelines to each individual count, that Section 3D1.4 would then apply to combine the offense levels for each count into a combined total through the unit analysis. Thank you for that summary. But one is moved to say, isn't this case and these circumstances precisely why in the last ten years or so, going back even longer than that for some jurisdictions, that's why the government always insists on a waiver? Do you mean the appeal waiver, Your Honor? Yeah, yeah. That's what gives the appeal waiver its value. Because frankly, sometimes the government does write sentences like the one you read to us in plea agreements. And so the question becomes, has the government adequately protected itself from having us wade into this very messy plea agreement negotiations, which frankly seem to call for a recommendation that the court do something that legally it could not do. Government should never put itself in that position. But sometimes it does, arguably. And that's why they say, hey, we got this appeal waiver. Everybody's human. We're all human. We're all going to make a few mistakes. Some of these mistakes just don't matter enough, even to the defense and thus as a part of the negotiation of a plea agreement. You agreed to the appeal waiver because the likely mistakes are unlikely to amount to much in the garden run of cases, mine run of cases. In the garden run of cases, Your Honor, the government does not breach the agreement that it wrote. And breach of the agreement is grounds for not enforcing the appeal waiver. But you've got to show prejudice, don't you? As to the breach? Yes. Yes, and there is prejudice, Your Honor, in two ways. First, it's quite clear that the court's 111-month sentence was based and selected in relation to the government's request for 126 months. The court's statements clearly suggested that it was coming down from the government's request. The court said, in fact, it was giving Mr. Parker credit for being a good father and a good grandson. Well, if he's giving credit, that credit has to come from somewhere. Well, it's coming from that 126 months and the district court thought that it was worth 15 months off. And even the government acknowledged before the resentencing hearing that the district court disagreed with its recommendation. That's at page, Joint Appendix page 223 in the government's written resentencing position. The government's request was based on the high end of the pre-sentence report range of 63 to 78 months plus 48 months for the consecutive 1028A sentences. Had the government stood by the fraud calculations that it had so carefully agreed to in the plea agreement, the guideline range it recommended would have been lower and thus its request for the total sentence would have been lower. Given that the district court made its choice of sentence in relation to the government's request, the court's choice would likely correspondingly been lower had the government stood by the agreement. And this court has recognized in a number of opinions that the government's recommendation carries weight. Secondly, there's harm and I think this is just as important. The position in the plea agreement was part of the government's inducement to get Mr. Parker to accept the plea. Again, there was a plea negotiation letter that was attached to Mr. Parker's 2255 motion so it's in the record. That's at Joint Appendix page 179. Both that letter and also the discussions at the plea colloquy hearing at pages 31 and 32 clearly indicate that the parties anticipated that the range would be either 41 to 51 months, as much as 41 to 51 months, or 51 to 63 months plus sentences for the 1028A sentences. Would you make clear to me what you think the government should have done? Judge Shrestha, the government should have stood by the recommendations, the provisions that it agreed in the plea agreement to recommend. Even though it was undoubtedly improper and contrary to the guidelines. But to treat these fraud counts separately? Yes, Your Honor. As this court has recognized as a general proposition in its recent... And had they done so, is there any dispute that the judge would have said no, fraud counts are grouped, they're not treated separately? I do not believe that there is. But at the same time, Your Honor, at the plea colloquy, even the court missed that this was wrong. So it was, you know, I kind of think the court's a little bit at fault here. At the plea colloquy hearing, when the court went over the plea agreement with Mr. Parker, the court never picked up on the fact that this was wrong. You're saying the government should have advocated disposition. Had they advocated, there's no doubt the court would have said no, that's inappropriate. That's not the way you calculate these fraud counts. I think that is correct, but that's not the end of the story. The end of the story is that the government, by making this agreement to recommend this treatment of the guidelines, then was effectively making a recommendation as to what total sentence it would recommend. And that total sentence was lower than what the pre-sentence report calculated. Had the government made that... Which was based on the inappropriate determination as to how to count, how to give numbers to these individual counts. The government's recommendation would have been yes. But, as this court has recognized as a general proposition in its recent Warner decision, having agreed to apply the guidelines in a certain way, even if that way is incorrect, the government cannot change its position later on. And I also would refer the court... And I don't disagree with you about that. I'm just wondering whether or not there was any... Really, there ended up being to your client, because had they done what you wanted them to do, the judge would have said, no, that's inappropriate. That is correct, but again, I think it still would have... The government still would have had to recommend a lower sentence than what it recommended. Which would have been based on the improper calculation. Yes, that's correct. The judge would have said, no, you can't do that. Yes, but at the same time, and the government has to... If you want a defendant to take a plea agreement by virtue of certain ways of calculating the guidelines, the government has to follow that through. Otherwise, it's a bait-and-switch, essentially. And that may be a little harsh, and I don't... I obviously can't say the government did this in bad faith. Well, it's a bait-and-switch where you get your money back. How... Even a bait-and-switch is not so bad if you get all your money back. But how... Mr. Parker didn't get his money back. He got the sentence that the judge would have been obligated to impose. I mean, the judge couldn't do what you now insist the government should have urged the court to do. The court couldn't have done it and wouldn't have done it. But the court could have considered the government's recommendation. So that's what it really comes down to. And I don't fault you for this. You know, I've heard lawyers make the kind of argument that says, well, Your Honor, we made a mistake. The government is standing... You know, since the U.S. Attorney stands up and says, well, Your Honor, we made this promise, both my sister counsel and I screwed up our guidelines calculation, and we're standing by the plea agreement, but, Your Honor, you know the law. And the judge says, yeah, well, sometimes people make mistakes. Yada, yada, yada. I'm going to impose the sentence that the guidelines, the proper application of the guidelines call for. That's what I mean by a bait and switch where you get your money back. You get your money back because you got what you were going to get anyway if the government had stood by its promise. Even assuming here that the government actually promised to do what you said it promised. But that assumes that the court would give the high end, would give exactly what the government had recommended. And we know based on the district court statements that the district court was giving him credit for certain personal characteristics. And just in terms, I just would refer the court to the bank's decision, which we have cited in our TAN brief, which does say that even though the parties mutually miscalculated the guidelines there, there was no breach where the government stood by its recommendation. And that contrasts with the Warner case. Ms. Pratt, I think I know what you might be going to say, but would you just briefly address the government's law of the case point? Certainly, Judge Duncan. As I understand the government's argument, I believe them to be saying that the claim that Mr. Parker made about ineffective assistance of counsel and breach in his 2255 is essentially the same claim that he is raising, you know, that we have been directed to bring. Well, we found no merit to early, we earlier found no merit to the claims for 2255 relief. And does that somehow become the law of the case? I contend it does. I think that was the argument. I contend it does not because it is not the same claim. Okay. The 2255 claim is related to the enhancement for the number of victims. So when it went back, it was fair game? I believe that it was, and in part because there was never a direct appeal. There was never any affirmation of the original judgment by this court. That's kind of another component of it as to the law of the case. But I do not believe that this court's consideration on 2255 of a different claim of breach precludes consideration of this new claim now. So that statement in the order, finding that Parker was entitled to an evidentiary remand, was sort of, it didn't cabin things on the appeal of the sentence. I do not believe that it did, Judge Duncan, no. The court also, I think I've covered the harm in terms of exercising the discretion. The court's fully aware, or as it's recognized in its McQueen decision, and I'll quote, the violations of plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice. That's all I have to say about the fourth prong of plenary analysis. And if I could just very quickly address remedies, since the court also asked the parties to brief that. As a preliminary matter, the court should reject the government's suggestion that the court should remand this case back to the district court for determination of the breach in the first instance. This court should go ahead and review the case, just as it has in numerous other cases in which it has not hesitated to address and define breach in the first instance, even on plain error review. Then as to an actual remedy, the defendant can elect one of two remedies. He can either elect rescission of the plea agreement so that he can go back to district court and move to withdraw his guilty plea and start over. Alternatively, he can request specific performance of the plea agreement. Mr. Parker elects the first option. He wants this plea agreement rescinded, and so he asks the court to vacate the entire judgment and remand the case so that he can move to withdraw his guilty plea. Thank you. You've got some time remaining, Ms. Brown. Okay. And then as... I'm over. After he argues, you have some time remaining. All right, Mr. Cook. May it please the court. The defendant faces a series of procedural hurdles here that he can't clear, and also loses on the merits, and I'll start with the merits. How about I start with how this happened in the first place, this plea agreement and this language and what it was intended to accomplish? Well, and I think that that goes straight into the merits, which is the way in which the plea agreement, at least from the government's perspective, was understood, and I think the course of conduct from the parties, the defense lawyer and the court reflects this, is that essentially you're moving through the steps that you have in 1B1.1, which is this is a multi-count case, so it's not a single fraud where you're looking then directly at irrelevant conduct, and if you go through the steps of A1, 2, and 3 in 1B1.1, you would figure out an offense level per count, and then you would get to grouping, and you would group it and bring it all together, and I think that the fact that the plea agreement says specifically that we're going to apply at least these provisions, and then it contemplates that there will be more provisions analyzed and applied, that there's an integration clause saying if you don't have an agreement in here, you don't have an agreement on this, and there isn't a discussion of grouping. Do you think this is a good way to do it? You just think this is a step? They just agreed on a couple of the first steps in the process of determining base offense level? I'm not suggesting that it is the best way to do it, but it's a permissible way, and I don't think it ultimately is even ambiguous, but because we're here under plain error, the Supreme Court said in Puckett in addressing the second prong of plain error that not all breaches will be clear and obvious. Plea agreements are not always models of draftsmanship, so the scope of the government's commitment will on occasion be open to doubt. At worst for the government, this is exactly that kind of scenario, and it fails under the second prong of plain error, and I would point out that I think there's really a kind of a significant bad incentive to impute into a plea agreement under plain error an agreement to apply guidelines incorrectly. First of all, it creates... It's because people make mistakes all the time. Guidelines are complicated. Exactly, and that's where plain error comes into play. If you don't object, and here, this isn't just a non-objection. We went through two sentencings. Nobody raised this point, and indeed the defense appropriately made use of the fact that there was grouping to argue that the two aggravated identity theft counts should be run concurrently with each other, and so they even embraced the idea, which I think further underscores that the way this plea agreement was understood was that it didn't address grouping, and that grouping correctly applied in this case, as it did, and so I think that that helps to the extent the court thinks that it's ambiguous whether or not this plea agreement addresses grouping. The fact that nobody treated it as such, not the district court, not the probation officer, not the defense lawyer, and not the government, suggests that this case should be decided... What would the defendant gain by this provision, these provisions? In other words, where you say, okay, this counts this much, this counts this much. What does he gain by just agreeing to half of the analysis and not getting to grouping? What does that get him? Why would he even agree to that? In white-collar cases, it is certainly my experience that it is not uncommon for people to agree on a couple of guideline provisions and not the whole package. It provides some kind of assurance about certain outer limits of the sentence without definitively recommending a guideline range. And I would say, if there is a sense that the courts will impute readily agreements about additional guideline provisions based on some being in a plea agreement, that creates a massive disincentive not to do partial agreements and plea agreements. I know, but these are the steps in determining what the ultimate defense level is going to be. You are just saying they went part of the way towards determining what that ultimate defense level is going to be. I just don't see how that is of any value unless, clearly, there are more important steps that have to be taken. Well, I think, I mean, I'm not sure that the loss amounts, there was a lot of room for the defendant to fight those, so those were pretty straightforward. He had an argument about the vulnerable victim, so that was a point that the parties discussed, and so they took the trouble to specifically lay out in the plea agreement what they would be fighting over that. And... Well, it is not to overstate it, which I'm going to do. It's almost like setting out a statutory maximum, but leaving out a statutory minimum, mandatory minimum. Again, it's not that, but it's kind of like that. That's what Judge Trax is getting at. You sort of tell the defendant in the plea agreement language, well, you know, these three things are in play, mandatorily in play, and you leave it out. And again, we can always Monday morning quarterback this stuff, but it is kind of weird when you talk about grouping. Grouping is grouping. Who cares what the first level analysis is? You want to know what it's going to look like after you do the grouping, because the grouping is what drives the sentence, including, you know, number of victims and the amount of the loss. All that is scooped up in the grouping. Let me give you a comparison to a far simpler scenario, which is suppose you just had an agreement on a suggested guideline range, and the parties specify that they're free in arguing the 3553A factors to home in on any points they want and make whatever arguments they want. There are lots of plea agreements that go out that way. Right. Exactly. And today, with an advisory guideline range system, that agreement on the range really doesn't settle all that much because when I read the paragraph, I thought, oh, we've got two people here who really don't understand the guidelines and use the wrong ones, apparently thinking you can do it separately, so now where do we go from here? But when you come up and argue, you say, no, we did this on purpose and we only agreed to half of the steps that you go through to get to the ultimate offense level, and that's what's throwing me because you're arguing this was intentional and I just find it hard to believe and it may not change the result at all. I'm just curious. Right. Well, and maybe I'm not following the court's question because I would say there's the issue of, so you may find it strange to have an agreement on offense levels per count when they do ultimately group, and then there's the question of, I could find it strange to have an agreement that certain guideline provisions would apply. Forget about grouping. Just that you have an agreement and others would be left open for further debate. That second category, I think, happens all the time and I think it's useful in plea negotiations where you have a large statutory range and the parties want some kind of assurance about their exposure. It doesn't, at the end of the day, give a whole lot of confidence to either side about the particular outcome, but it takes some issues off the table and is useful. Well, sure, but sometimes they say the issue does exist, but it's up to me. It's not a sea plea. Was the grouping unstated precisely because everybody assumed that it would be, that grouping is what normally happens? Right. Well, I can't speak for defense. I know. But from the government's perspective, I think the idea was that it was an open question whether grouping would apply and that would be something that would be ironed out. The PSR comes out at groups and that seems right and there was no further discussion of the point because everyone was on board and we are today that it's groups. It definitely does. And so what you had was a plea agreement that, as I was indicating, went through the first couple of steps as to the offense level and so it's just a garden variety situation of parties agreeing to some of the applicable guidelines, but not all, which I think is useful and not something that courts should either discourage or create under plain error hair triggers that allow a defendant to evade an appeal waiver and then come in and say there was prosecutorial misconduct and then say, I get a new judge and now that I see it I don't like the sentence I got. One of the things that the plain error is meant to do is to prevent somebody, whether intentionally or as a sort of after the fact plan to say, I'm going to find out how the proceedings turn out and if I don't like them then I'm going to come in with this new argument. Plain error and waivers to Judge Davis' first question. Exactly. And I think they're related. And so ultimately I think this is a fairly straightforward case under the second prong of plain error that at worst for the government it is ambiguous and that the scope of whether grouping is covered here is in doubt. No one below treated it as having covered grouping across two sentencing and multiple defense lawyers and that as a result that's a straightforward way to resolve the appeal. I think we understand your position, Mr. Kudlow. Thank you and we ask that you affirm the judgment. Ms. Pratt. Your Honor, the error in this case was plain. The part of the plea agreement that we're talking about had very specific, clear language. The government did not do what it said it was going to do. Instead it said that the probation officer agreed with the parties that the base offense level was seven and that the aggregate loss amount was 12. That is not what the parties agreed to. As to Judge Traxler, your question about what did Mr. Parker have to gain from this treatment of the fraud guideline, he gained the possibility of a recommendation for a lower sentence from the government. That's what he gained and that is what helped to induce him to accept this plea agreement. And then I want to Actually my question was what would he gain if the scenario he's describing is what actually occurred. But I understand your position. I think that ends up being the same thing but I also want to make sure that the court understands that there is a difference between what happens under 3D1.2 and the grouping of counts in the first instance and 3D1.4 which is the unit analysis that applies after any grouping has been done. And this is an odd situation where non-grouping and application of the unit analysis actually results in a lower range. But I think again these provisions were so carefully laid out particularly in contrast to some of the other provisions in the plea agreement where the parties agreed to recommend for example as to Mr. Parker's foreign conviction that it should not apply or as to the vulnerable victim enhancement that the parties would essentially agree to disagree. They would leave that open for sentencing. There is no doubt as to the fraud count guidelines that it was clear, affirmative, declarative language the base offense level for count one is six and the loss amount is, or the number of points for the loss on that count is. That's not ambiguous. Is there any doubt about what the district court would do? The district court has sentenced Mr. Parker to the same total of 111 months twice now. That in a funny way Judge Duncan maybe sort of ties in with the previous case. The judge picked a total but the reason that at least as to the first hearing the judge clearly I'm afraid demonstrated a lack of understanding about how to distribute the ultimate term of imprisonment among the different counts. But as to the second sentencing, the resentencing again the government made the same recommendation that it made the first time. So I don't think that the I think if it went back You don't think there's any inference to be drawn from that one way or the other? That's correct. I think if the government made if it went back for specific performance and the government made a lower recommendation I think the judge would take that into account and that there's a good possibility in light of the judge's comments about giving Mr. Parker credit that the ultimate sentence would end up being lower. And then I take it you don't disagree that if the government says we will recommend that an offense level of at least six as to a particular count doesn't preclude the government from recommending offense level of seven. That is correct but that was not the terms of this agreement. They said clearly the base offense for example on count one the base offense level is not at least. Okay. What was the at least language? The at least language came as a prefatory sentence. Okay. So actually if I could address that just very briefly. It was that the United States and the defendant will recommend to the court that at least the following provisions apply. That means that at least the following provisions identified in the plea agreement apply and they  the way that the parties agreed to such that as a result of the application of those specified provisions other provisions that contradict the agreement do not apply. And I would direct the court's attention to the Embry decision which was unpublished but it was argued and authored and that's I think a very similar situation where the government agreed it had no information that would preclude application of the safety valve. One of the requirements of the safety valve is that a defendant not possess a dangerous weapon. The government then turned around and argued that the dangerous weapon enhancement under the drug guideline applied. It's not presidential but I would intend that it is more persuasive than a case that is simply submitted to a panel without argument because the issues have been aired much more fully. So in conclusion we urge the court to find that the government breached the plea agreement and that the breach affected both Mr. Parker's rights and the integrity of the administration of justice. Finally we ask the court to         that the government breached the integrity of the administration of justice. Thank you.
judges: William B. Traxler Jr., Allyson K. Duncan, Andre M. Davis